**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

K.E.,

     Plaintiff,

vs.

THE BOARD OF EDUCATION OF THE RIO
RANCHO PUBLIC SCHOOLS; COACH DANNY
CHARLEY, in his individual capacity; COACH
CHRISTOPHER "DAN" CHARLEY, in his
individual and official capacity; KURT SCHMIDT,
in his individual and official capacity; PHIL
SCHROER, in his individual and official capacity;
BRUCE CARVER, in his individual and official
capacity; CATHERINE RODRIGUEZ, in her
individual and official capacity; V. SUE
CLEVELAND, Ed.D., in her individual and official
capacity; JOY A. ROSS, Ed.D., in her individual
and official capacity; and NATALIE TODD, in her
official capacity,

     Defendants.

Civ. No. 21-632 MV/SCY
(consolidated with Civ. No.
21-1032 MV/SCY)

**ORDER GRANTING MOTION TO APPOINT**
**GUARDIAN AD LITEM, DENYING**
**MOTION TO STAY DISCOVERY**
**PENDING CRIMINAL CHARGES,**
**AND GRANTING MOTION TO QUASH**

In these consolidated cases, Plaintiff alleges that Defendant Charley isolated K.E., a

female football player; solicited her to engage in oral sex; and sexually assaulted her in the girl's

locker room, in the equipment shed on the football field, and in a van he used to transport only

her and football equipment. First Amended Complaint, Doc. 66 ¶ 12.[1] In the beginning stages of

this case, the parties filed several motions:

---

[1] All citations are to documents in the lead case, No. 21-632, unless stated otherwise.

- Defendant Charley's Motion For Appointment Of Guardian Ad Litem For Defendant And Memorandum In Support, Doc. 20;

- Defendant Charley's Motion For Limited Stay Of Discovery As To Defendant And Memorandum In Support, Doc. 21;

- Plaintiff's Motion For Summary Judgment On Counts I And II Of Her Complaint Which Allege Violations Of K.E.'s Fourteenth Amendment Rights By Defendant Coach Danny Charley, Doc. 23; and

- Defendant Charley's Opposed Motion For Extension Of Time To Respond To Plaintiff's Motion For Summary Judgment, Doc. 26.

The Court granted in part Doc. 21, Motion for Limited Stay of Discovery, and granted Doc. 26, Motion for Extension of Time to Respond To Plaintiff's Motion For Summary Judgment. *See* Doc. 35. The Court's Order stayed discovery against Defendant Charley pending a decision on the Guardian Ad Litem ("GAL") appointment. *Id.* It deferred decision on Defendant Charley's request to stay discovery indefinitely pending the outcome of a criminal investigation against him. *Id.* at 6. It also ordered that:

> Defendant Charley's time to respond to Plaintiff's Motion for Summary Judgment (Doc. 23) is stayed pending full resolution of Motion For Limited Stay Of Discovery As To Defendant And Memorandum In Support, Doc. 21, and Motion For Appointment Of Guardian Ad Litem For Defendant And Memorandum In Support, Doc. 20.

*Id.* The Court further ordered Defendant Charley to file supplemental information *in camera* in connection with the motion for GAL appointment. *Id.* Defendant Charley submitted that supplemental information on January 14, 2022.

After the Court's Order issued, the parties waived a Rule 16 scheduling conference and began conducting discovery against the only other defendant in the case at the time, The Board Of Education Of The Rio Rancho Public Schools ("RRPS"). Docs. 37 & 38. Subsequently, the parties agreed to try for an early settlement and agreed the Court did not need to decide the GAL issue prior to the settlement conference. Doc. 51 (clerk's minutes for status conference).

After this agreement, however, the parties continued to file motions related to discovery:

- Defendant Danny Charley's Opposed Motion To Quash Subpoena And For Protective Order And Memorandum In Support, Doc. 63; and

- Plaintiff's First Motion To Compel Discovery, Doc. 86.

Plaintiff also filed an Amended Complaint adding as defendants Christopher Dan Charley,[2] Kurt Schmidt, Phil Schroer, Bruce Carver, Catherine Rodriguez, V. Sue Cleveland, Joy A Ross and Natalie Todd. Doc. 66.

As a result of this amendment adding new parties, Defendant RRPS determined it needed more discovery prior to attempting the settlement conference. Doc. 104 (clerk's minutes for status conference). Accordingly, Judge Fouratt determined he would not hold a settlement conference until the parties emailed him with agreement as to the propriety of holding one. *Id.* In light of that decision, several pending motions in this case became ripe. Doc. 105 (clerk's minutes for status conference). The parties also requested the Court issue a formal scheduling order, which the Court agreed to do after the parties submit an Amended Joint Status Report. Doc. 105; Doc. 106.

In the present Order, the Court addresses:

- Defendant Charley's Motion For Appointment Of Guardian Ad Litem For Defendant And Memorandum In Support, Doc. 20;

- The remaining portion of Defendant Charley's Motion For Limited Stay Of Discovery As To Defendant And Memorandum In Support, Doc. 21;

- Defendant Danny Charley's Opposed Motion To Quash Subpoena And For Protective Order And Memorandum In Support, Doc. 63; and

- The current discovery stay and briefing stay related to Defendant Charley.

---

[2] All references to "Defendant Charley" in this Order are to "Coach Danny Charley" and not the more-recently added "Coach Christopher 'Dan' Charley," who is Danny Charley's son. Doc. 66 ¶¶ 26-27.

## I.   Motion for Appointment of GAL

"A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem— or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2). Previously, the Court explained that "[t]he obligation imposed by this rule only 'arises after a determination of incompetency.'" Doc. 35 at 3 (quoting *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 (2d Cir. 2003)). The Court explained:

> There has been no legal adjudication of incompetence in this case, but Defendant has certainly raised a question as to his competency given that a court-appointed forensic evaluator, Maxann Schwartz, PhD, examined Defendant and the result of this evaluation was a decision by the State of New Mexico that Defendant was incompetent to stand trial. The Court has no information as to the degree of Defendant's impairment or how that impairment might affect proceedings in this case.

Doc. 35 at 3. The Court ordered Defendant Charley to provide the report of the forensic evaluator for the Court to evaluate the issue of competency. *Id.* at 4-5.

After the Court issued this Order and Defendant Charley provided this information, Plaintiff issued a subpoena to Clinical, Forensic & Neuropsychology Associates of New Mexico and its owner, Dr. Maxann Shwartz, Ph.D., seeking the raw data (Danny Charley's answer sheets) and derived data (test reports) from the psychological evaluations conducted in the criminal proceeding. Doc. 63 at 2-3. Defendant Charley moved to quash this subpoena, and in connection with his motion, withdrew "incompetency" as an affirmative defense to liability. Doc. 87. In reply to this motion, Defendant Charley explained that the request for a GAL is not based on full legal incompetency, but to help defendant make decisions in the case:

> Defendant has not asserted that he is incompetent to stand trial in this civil proceeding or that he was incompetent at the time of the alleged acts giving rise to Plaintiff's claims. Indeed, in order to remove any doubt or confusion about the

purpose of the undersigned counsel's request for appointment of a guardian ad litem for Defendant, Defendant has filed a Notice of Withdrawal of Affirmative Defense No. 12 (that Defendant may be an incompetent person). See Doc. 87. Although the issue of Defendant's competency is not raised as a defense to the claims in this case at this time, the undersigned remains concerned about the efficacy of the attorney-client relationship and Defendant's ability to assist in his defense. Thus, the present posture of the issue at hand involves a threshold question of whether Defendant should have a guardian ad litem appointed to assist him in making decisions in this case.

Doc. 88 at 3-4.

"[C]ourts interpret the term 'incompetent person' in Rule 17(c) to refer to a person without the capacity to litigate under the law of his state of domicile . . . ." *Graham v. Teller Cty., Colo.*, 632 F. App'x 461, 465 (10th Cir. 2015) (some internal quotation marks omitted). New Mexico state law defines a "guardian ad litem" as "a person appointed by the district court to represent and protect the interests of a minor or an incapacitated person in connection with litigation or any other court proceeding." NMSA §§ 45-1-201(22), 45-5-101(E). The New Mexico professional rules of conduct further state:

A. Client-Lawyer Relationship. When a client's capacity to make adequately considered decisions in connection with a representation is diminished, whether because of minority, mental impairment or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

B. Protective Action. When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian ad litem, conservator or guardian.

NMRA Rule 16-114.

The Court does not find Defendant Charley fully, legally incapacitated under state law, and indeed Defendant Charley has withdrawn that contention.[3] Therefore, the Court does not make a ruling based on the evidence Defendant Charley submitted in camera as to his incompetency to stand trial on criminal charges. Rather, the Court finds that Federal Rule of Civil Procedure 17 and New Mexico law permits appointment of a GAL in cases of less than full legal incapacity necessitating complete guardianship; that is, in cases where a client's capacity to make adequately considered decisions in connection with a representation is diminished. Counsel has represented that his client's ability to make rational decisions is diminished. Doc. 88.

The record supports these concerns. In connection with criminal charges filed against Defendant Charley, Psychologist Maxann Shwartz examined Defendant Charley and, on January 25, 2020, concluded that he was not competent to stand trial. Approximately one year later, Kim Freeland, Ph.D. LMHC conducted another exam of Defendant Charley and Dr. Freeland and Dr. Shwartz (who was the supervising psychologist) again concluded, on May 5, 2021, that Defendant Charley "was not competent to proceed with adjudication at this time."[4] Based on these reports, the State dismissed previous criminal charges filed against Defendant Charley. Doc. 21-5. Although the significance of these doctors' reports is lessened by Defendant Charley's clarification that he is not asserting incompetency to stand trial in the present case and

---

[3] State law defines "incapacitated person" as "any person who demonstrates over time either partial or complete functional impairment by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication or other cause, except minority, to the extent that the person is unable to manage the person's personal affairs or the person is unable to manage the person's estate or financial affairs or both." NMSA § 45-5-101(F).

[4] These reports were submitted to the Court for in camera review. Because the reports are confidential, Doc. 20-4, the Court limits its discussion of the report to the conclusions of the doctors who examined Defendant Charley and when those conclusions were made.

by his withdrawal of incompetency as a defense to civil liability, medical opinions that Defendant Charley was not competent to stand trial in a criminal case lend support to Defendant Charley's counsel's concerns and his request for the appointment of a GAL.

In her response opposing appointment of a GAL, Plaintiff argues that Rule 17 does not require the appointment of a GAL. Citing *Xander v. Snyder*, an unpublished case from this District, Plaintiff urges the Court to "exercise its discretion to conduct its own inquiry into his competence and issue another appropriate order, such as the production of the Defendant's psychological evaluation to all parties, to fulfill the obligations of Rule 17(c)." Doc. 24 at 5 (citing *Xander v. Snyder*, No. 17-557 GBW/SMV, 2018 WL 566434 (D.N.M. Jan. 25, 2018)).

*Xander* presented a different situation than the present case. The competency issue in *Xander* arose when *opposing counsel after reaching a settlement* expressed a concern that, because the plaintiff previously had been adjudicated as incompetent to stand trial in several criminal cases, the settlement might require court approval.[5] 2018 WL 566434, at *1. Significantly, the *Xander* opinion does not indicate that either plaintiff's own counsel or opposing counsel actually believed the plaintiff was incompetent or in need of a GAL. *Id*. To the

---

[5] The court in *Xander* had good reason to put little to no weight in the previous findings of incompetency. As the court stated, "Plaintiff's incompetence in various criminal cases in state magistrate court was primarily a matter of administrative formality" as in two previous cases where the plaintiff was found incompetent "Plaintiff simply stipulated to incompetence without undergoing any underlying psychological evaluation." 2018 WL 566434, at *3. The finding of incompetence in the remaining cases was predicated on a psychological evaluation that lasted approximately twenty minutes and consisted of questions such as the identity of the President and the Governor, which Plaintiff stated she answered correctly. *Id*. Despite answering these questions correctly, the psychologist informed the plaintiff "that she would assist her in avoiding the charges by issuing findings of incompetence." *Id*. The *Xander* court also considered the plaintiff's current psychiatric treatment, whether she met New Mexico's definition of an incapacitated person, her activities of daily living, and her conduct and demeanor at the court's competency hearing. *Id*. at *3-4. As set forth above, the fact that Defendant Charley is not relying on incompetency as a defense and is not alleging he is incompetent lessens also lessens the import of the psychological evaluations in his criminal case.

contrary, "both parties wish[ed] to waive the appointment of a guardian ad litem. Plaintiff in particular desired a quick approval of the proposed settlement due to the exigent circumstance that the well providing running water to her home needed to be replaced." *Id*. at *2 (citation omitted).

The *Xander* opinion also provides no indication that defense counsel's concerns about plaintiff's competency stemmed from any direct observations or dealings defense counsel had with plaintiff. Instead, it appears defense counsel raised the issue in an abundance of caution given the previous incompetency determinations. Further, the case having settled at the time the competency issue was raised, no issue existed regarding the need for a GAL to assist the plaintiff in completing the discovery process or in providing information related to the litigation.

Thus, *Xander* involved a situation where no attorney in the case believed the plaintiff needed a GAL, where the plaintiff's behavior provided no indication she needed a GAL, where the court independently found the settlement to be fair and reasonable, and where the fact of settlement meant plaintiff had no further role in the litigation with which a GAL could assist. Typically, where a party's need for a GAL is in question, the better part of caution militates in favor of appointing a GAL. And so timing and caution, it appears, motivated the *Xander* court to hold a hearing before approving, without the appointment of a GAL or the benefit of a GAL report, a settlement in case where the plaintiff had been found incompetent in a criminal case.

Here, the forces of timing and caution pull in the opposite direction. Both parties, and the public, have an interest in having this case move forward. But Plaintiff's suggested course of action would impede forward progress. Plaintiff seeks raw data from Defendant Charley's previous psychological evaluations so that Plaintiff can present that data to her own psychological expert. Plaintiff also requests that the Court hold a competency hearing. The

logical timing for such a hearing would be after Plaintiff's expert analyzed any raw data provided and issued a report. Given Defendant Charley's counsel's professed need for a GAL, the Court would not be inclined to order Defendant Charley to proceed with providing discovery and litigating motions without a GAL before holding a hearing related to the need for a GAL. Thus, following Plaintiff's proposed course of action, this case would not proceed until after the raw data was provided, Plaintiff's expert analyzed that raw data, Plaintiff's expert prepared a report about Defendant Charley, the Court held a hearing about whether to appoint a GAL for Defendant Charley, and then the Court issued a decision sometime after the hearing. Thus, considerations of timing and delay weigh against Plaintiff's suggested course of action.

So does prudence. Defendant Charley's counsel, who has had the most interaction with Defendant Charley, has represented that he believes Defendant Charley needs the assistance of a GAL as he proceeds through this litigation. The case for taking the more cautious approach of appointing a GAL is especially strong where the party opposing the GAL appointment identifies no compelling reason not to appoint a GAL. Here, Defendant Charley has withdrawn incompetency as a defense to liability and does not argue he is incompetent. Doc. 87; Doc. 105. This having been done, Plaintiff does not explain how appointing a GAL for Defendant Charley will prejudice her. Nor does she present any compelling reason unrelated to prejudice that that the Court should not appoint a GAL for Defendant Charley. It does not appear that Plaintiff has any interest in the attorney-client relationship between counsel and Defendant Charley or whether counsel's representation is adequate without a GAL. Moreover, the Court concludes that

appointment of a GAL will promote the efficiency and accuracy of discovery, briefing and other aspects of this litigation.[6]

The Court finds that appointment of a GAL for Defendant Charley is reasonable and necessary. Within 30 days of the date of this Order, Defendant Charley shall file another motion to appoint a GAL, identifying a GAL who has agreed to serve in this capacity. If Defendant Charley has not found a GAL willing to serve the appointment or has not resolved the issue of cost within 30 days, he shall file a status report no later than September 19, 2022 that includes good cause to support any deadline extension Defendant Charley might seek.

## II.    Motion to Stay Discovery Pending Criminal Charges

As the Court explained above, Defendant Charley has moved to stay discovery pending the outcome of a related criminal investigation. Doc. 21. On September 22, 2021, a Rio Rancho detective came to Defendant Charley's residence to question him regarding new allegations in the case. *Id.* at 3. The allegations were criminal sexual penetration of a minor, K.E. *Id.* No warrant had been issued and the detective left the residence at the request of Defendant Charley's attorney. *Id.* Apparently, there has been no further activity in this investigation. Doc. 104 (on August 3, 2022, "Mr. Coppler represented that there were no new or revived criminal charges against Defendant Danny Charley").

Defendant Charley contends that this detective's visit means there are ongoing criminal parallel proceedings related to the conduct at issue in this case, and that discovery should be

---

[6] Counsel for all Defendants have not stated with certainty whether Defendants' insurer will cover the costs of a GAL. They have indicated, however, that the reasonableness and necessity of the appointment may factor into this decision. Doc. 105. As discussed in this Order, the Court considers the appointment of a GAL for Defendant Charley to be reasonable and necessary. The Court does not anticipate that a GAL will be subject to cost-sharing by Plaintiff or taxation of costs after judgment.

stayed to protect his Fifth Amendment privilege in the civil proceedings. Doc. 21 at 2-4. Plaintiff opposes the request to stay discovery. She argues that there are no actual proceedings against Defendant Charley and that the possibility of future criminal charges does not justify delaying this civil case. Doc. 25 at 3-4.

The Court agrees with Plaintiff. Defendant Charley was indicted by a grand jury in state court on November 1, 2018 for one count of Child Solicitation by Electronic Communication Device and one count of Contributing to the Delinquency of a Minor. Doc. 21 at 2. But the state court ordered a competency evaluation on the defendant's motion. *Id.* at 3. After the results were disclosed to counsel, the State of New Mexico dismissed the charges on June 22, 2018. Doc. 21 at 3. Those charges have not been refiled. There is no current, actual proceeding.

"The Constitution does not generally require a stay of civil proceedings pending the outcome of criminal proceedings, absent substantial prejudice to a party's rights. When deciding whether the interests of justice seem to require a stay, the court must consider the extent to which a party's Fifth Amendment rights are implicated." *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009) (citations omitted). Further, "a defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Id.* Courts have utilized a six-factor test to account for the competing interests of the parties. *See Hilda M. v. Brown*, No. 10-2495, 2010 WL 5313755, at *3 (D. Colo. Dec. 20, 2010). These factors are: "(1) the extent to which the issues in the criminal case overlap with those in the civil case; (2) the status of the case, including whether defendants have been indicted; (3) the interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest." *Id.*

The first factor weighs in favor of Defendant Charley: the civil and potential criminal case are both predicated on allegations that Defendant Charley sexually abused K.E. The fourth factor also weighs in favor of Defendant Charley: proceeding in the civil case while under the cloud of potential criminal charges does create a burden on Defendant Charley. The remaining factors, however, weigh heavily against a stay in the civil case.

With respect to the second factor, "[a] stay is more likely warranted if an indictment has already been issued because (1) the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and (2) the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." *AIG Life Ins. Co. v. Phillips*, No. 07cv500, 2007 WL 2116383, at *2 (D. Colo. July 20, 2007) (internal quotation marks and citation omitted). An exception might be made if "criminal charges appear imminent." *Id.*; *see also D.S. v. Geo Group Inc.*, No. 15-0774 RB/KBM, 2017 WL 3588793, at *1 (D.N.M. March 2, 2017) (DOJ issued a target letter and "reported that [it] intended to take action against [the defendant]"); *Chand v. Corizon Med.*, No. 15-967 WJ/KRS, 2018 WL 3935038, at *1 (D.N.M. Aug. 16, 2018) ("According to quarterly status reports filed with the Court, the DOJ investigation is still ongoing and active.").

One visit from a detective almost a year ago with no further activity does not persuade this Court that criminal charges are "imminent" or that the investigation is "active." This conclusion is supported by the fact that related (but lesser) criminal charges indeed were filed, but then dismissed. Therefore, the second factor weighs against a stay.

The third factor considers a plaintiff's interest in proceeding expeditiously and any prejudice a delay would cause. Plaintiff alleges that Defendant Charley sexually abused her in 2016. Doc. 1-1 at ¶ 57. Defendant Charley was indicted on November 1, 2018 and the State

dismissed the case on June 22, 2018. Plaintiff then filed this lawsuit in 2021. Plaintiff, a high school student at the time of the alleged assault, has a strong interest in proceeding with, and resolving, this litigation. Further, because the alleged assault occurred six years ago, further delay increases the possibility that evidence otherwise available to both sides will be lost. Because no criminal case is pending and no information is known as to if and when criminal charges might be filed, resolution of the criminal case is indefinite. What is known, however, is that a criminal case has not even reached the starting line and so the finish line, at best, is far off.

These same considerations bear on the fifth and sixth factors: the interest of the courts and the public. Like, Plaintiff, the courts and the public have an interest in bringing cases to a speedy resolution. This interest would be undermined by delaying resolution of the civil case until a yet-to-be-filed (and possibly never-to-be-filed) criminal case is resolved.

The Court therefore concludes that the stay of discovery against Defendant Charley should be lifted upon a Court order appointing a GAL for Defendant Charley. Shortly after appointing a GAL, the Court will also issue a briefing scheduling on Plaintiff's Motion for Summary Judgment, unless Defendant Charley shows other grounds for delaying briefing.

## III.   Motion to Quash Subpoena

Plaintiff issued a subpoena to Clinical, Forensic & Neuropsychology Associates of New Mexico and its owner, Dr. Maxann Shwartz, Ph.D., seeking the raw data (Danny Charley's answer sheets) and derived data (test reports) from the psychological evaluations conducted in the 2018 criminal proceeding. Doc. 63 at 2-3. Defendant Charley moves to quash this subpoena, arguing: (1) the subpoena does not comply with the Health Insurance Portability Accounting Act ("HIPAA"); (2) the discovery sought is not relevant or proportional to the needs of the case; (3) Plaintiff seeks the materials for improper purposes; (4) an interpretation of raw data and test results by Plaintiff's retained expert is inappropriate; (5) the information sought in the subpoena

is private, confidential and privileged information that belongs to Defendant Charley and he does not consent to its release; and (6) the subpoena commands the production of materials more than 100 miles from the location of the subpoenaed entities. Doc. 63 at 12-19.

In response, Plaintiff argues that "Defendant Charley has put at issue whether he is an incompetent person under Federal Rule of Civil Procedure 17(c) and has asked this Court to decide whether a guardian ad litem ("GAL") should be appointed because he has been previously adjudicated incompetent in a state criminal proceeding." Doc. 70 at 2. "Whether Defendant Charley is incompetent or feigning such to avoid criminal liability, delay the civil proceedings, and/or to reduce any punitive damages award against him is both relevant and discoverable . . . ." *Id.*

As explained above, the Court has not adjudicated Defendant Charley incompetent or incapacitated. Defendant Charley withdrew that assertion and the Court does not independently find incompetence. Although the findings of incompetence in the criminal proceedings lend some support to the appointment of a GAL, sufficient independent reasons exist for appointing a GAL as Defendant Charley's counsel has independently expressed the need for a GAL appointment.

Further, now that Defendant Charley has made clear that he "has not asserted that he is incompetent to stand trial in this civil proceeding or that he was incompetent at the time of the alleged acts giving rise to Plaintiff's claims," Doc. 88 at 3, Plaintiff's interest in opposing the appointment in the GAL is significantly decreased. Commensurately, Plaintiff's interest in obtaining data that could assist her in opposing appointment of the GAL has also decreased. It no longer appears that Defendant Charley has put his mental state at issue in this litigation. Therefore, the Court agrees with Defendant Charley that the discovery sought is not relevant or

proportional to the needs of the case. The Court GRANTS the motion and QUASHES the subpoena on that basis. The Court need not address the other issues raised by the parties.

<b><u>CONCLUSION</u></b>

1.      The Court GRANTS Defendant Charley's Motion For Appointment Of Guardian Ad Litem For Defendant And Memorandum In Support, Doc. 20. Within 30 days of the date of this Order, Defendant Charley shall file another motion to appoint a GAL, identifying a GAL who has agreed to serve in this capacity. If Defendant Charley has not found a GAL willing to serve the appointment or has not resolved the issue of cost within 30 days, he shall file a status report by September 19, 2022 showing good cause to extend this deadline.

2.      Pending until issuance of a Court order appointing an identified GAL, the Court temporarily extends: (1) the stay of discovery addressed to Defendant Charley including the taking of his deposition and issuance of any written discovery to him (e.g. requests for admission, inspection, or production, and interrogatories); and (2) the briefing stay on Plaintiff's summary judgment motion (Doc. 23).

3.      The Court otherwise DENIES that portion of Defendant Charley's Motion For Limited Stay Of Discovery As To Defendant And Memorandum In Support, Doc. 21, which was previously taken under advisement.

4.      The Court GRANTS Defendant Danny Charley's Opposed Motion To Quash Subpoena And For Protective Order And Memorandum In Support, Doc. 63, and QUASHES the subpoena.

        SO ORDERED.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE